FILED

19 MAR 19 AM 11: 36

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:  M M E          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 2018 Grand Jury  **19 CR 0 9 4 6 CAB**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Sec. 1349 – Conspiracy to Commit Honest Services Mail Fraud and Health Care Fraud; Title 18, U.S.C., Secs. 1341 and 1346 – Honest Services Mail Fraud; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |
| STEPHEN ANDREW STEPANIUK (1), SAFETY WORKS (2), MEDICAL LEGAL EVALUATIONS, INC. (3), | |
| Defendants. | |

The grand jury charges, at all times relevant:

## INTRODUCTORY ALLEGATIONS

### DEFENDANT AND OTHER PARTICIPANTS

1.    Defendant STEPHEN ANDREW STEPANIUK was the President, Chief Executive Officer, Secretary, Chief Financial Officer, and only director of record of defendant SAFETY WORKS, a California Corporation with a primary business address in Lawndale, California.  He remained in those roles until SAFETY WORKS was dissolved in December 2016.  STEPANIUK was also the CEO and a Director of defendant MEDICAL LEGAL EVALUATIONS, INC., a California corporation with a primary business address at the same location in Lawndale as SAFETY WORKS.  In 2011, defendant STEPANIUK

VHC:CPH:FAS:nlv:San Diego
3/19/19

1  opened a bank account in the name of SAFETY WORKS "dba" MEDICAL LEGAL
2  EVALUATIONS, INC., and retained signature authority over that account.

3      2.    Functional Capacity Exams (FCE's) assess an individual's work
4  capacities and activity restrictions, and may cover how many hours a
5  particular activity can be performed during an 8-hour work day, and
6  whether the individual has any limitations in the use of the hands, use
7  of equipment, ability to lift and carry, and other capabilities relevant
8  to the work-place.

9      3.    Dr. Steven Rigler (charged elsewhere) was a chiropractor
10 licensed to practice in California, who operated three clinics in the
11 Southern District of California specializing in chiropractic medicine.

12     4.    Alexander Martinez (charged elsewhere) managed Dr. Rigler's
13 clinics, first in Calexico, then also in San Diego and Escondido, and,
14 in that capacity, controlled (on Dr. Rigler's behalf) the referral of
15 patients to ancillary service providers.

16     5.    Jennifer Louise White (charged elsewhere) brokered
17 arrangements between providers of various ancillary services and doctors
18 and clinics, in which the providers purchased patient referrals from the
19 doctors for a negotiated per-patient fee.    To facilitate these
20 activities, she owned and operated various companies, including TCB
21 Medical Marketing.

22                    **PHYSICIANS' DUTY TO THEIR PATIENTS**

23     6.    Physicians, including doctors, surgeons, and chiropractors,
24 owed a fiduciary duty to their patients. This duty required that
25 physicians act in their patients' best interests, and not for their own
26 professional, pecuniary, or personal gain.    Under California law, a
27 physician had a fiduciary duty to disclose all information material to
28 the patient's decision when soliciting a patient's consent to a medical

                                       2

procedure; such information included personal interests unrelated to the patient's health, whether research or economic, that might affect the physician's professional judgment.   Accepting kickbacks, bribes, and referral fees without the patient's consent was a breach of a physician's fiduciary duty to his patient.

## CALIFORNIA WORKERS' COMPENSATION SYSTEM

7.    The California Workers' Compensation System ("CWCS") required employers in California to provide Workers' Compensation benefits to employees for qualifying injuries sustained in the course of employment. Under the CWCS, all claims for payments for services or benefits provided to the injured employee, including medical and legal fees, were billed directly to, and were paid by, the insurer.  If the insurer did not pay, the provider could file a lien against the employee's Workers' Compensation claim, which accrued interest until paid in an amount ordered by the Workers' Compensation Appeals Board ("WCAB") or as negotiated between the insurer and the provider.

8.    The CWCS required claims administrators to authorize and pay for medical care that was "reasonably required to cure or relieve the injured worker from the effects of his or her injury," and included medical, surgical, chiropractic, acupuncture, and hospital treatment.

9.    The CWCS and private and public CWCS insurers were "health care benefit programs" under Title 18, United States Code, Section 24, that is, a public or private plan or contract, affecting commerce, under which any medical benefit, item, or service was provided to an individual, and any individual or entity who provided a medical benefit, item or service for which payment may be made under the plan or contract.

10.   California Labor Code Section 139.3 prohibited a physician from referring Workers' Compensation patients for a variety of medical

3

1  goods and services to an entity in which that physician had a financial
2  interest. A financial interest included any remuneration, rebate,
3  subsidy, or other form of direct or indirect payment.

4      11. According to California Labor Code Section 3209.3, the term
5  "physician" in the Labor Code included physicians and surgeons holding
6  an M.D. or D.O. degree, psychologists, acupuncturists, optometrists,
7  dentists, podiatrists, and chiropractic practitioners licensed by
8  California state law and within the scope of their practice as defined
9  by California state law.

10                                **Count 1**

11  **CONSPIRACY TO COMMIT HONEST SERVICES MAIL FRAUD AND HEALTH CARE FRAUD
12                        18 U.S.C. § 1349**

13      12. Paragraphs 1 through 11 of this Indictment are realleged and
14  incorporated by reference.

15      13. Beginning on a date unknown to the grand jury, but no later
16  than mid-2014, and continuing through at least October 2015, within the
17  Southern District of California and elsewhere, defendants STEPHEN ANDREW
18  STEPANIUK, SAFETY WORKS, and MEDICAL LEGAL EVALUATIONS intentionally
19  conspired with Dr. Steven Rigler, Alexander Martinez, Jennifer Louise
20  White, and others to:

21      a. commit Honest Services Mail Fraud, that is, to knowingly
22  and with the intent to defraud, devise and participate in a material
23  scheme to defraud and to deprive patients of the intangible right to
24  their physicians' honest services, and for the purpose of executing such
25  scheme, to mail and cause to be mailed via the U.S. Postal Service and
26  private and commercial interstate carrier any matter and thing, in
27  violation of Title 18, United States Code, Sections 1341 and 1346; and

28

                                    4

1        b.    commit Health Care Fraud, that is, to knowingly and with
2    the intent to defraud, devise and participate in a material scheme to
3    defraud a health care benefit program, and to obtain money and property
4    owned by, and under the custody and control of, a health care benefit
5    program, by means of material omissions, and false and fraudulent
6    pretenses, representations, and promises, in violation of Title 18,
7    United States Code, Section 1347.

8    **FRAUDULENT PURPOSE**

9       14.  It was the goal of the conspiracy for defendants to
10   fraudulently obtain money from health care benefit programs for services
11   provided to Workers' Compensation patients that defendants procured by
12   paying bribes and kickbacks to the referring physicians and those acting
13   on behalf of those physicians.

14   **MANNER AND MEANS**

15      15.  The conspirators used the following manner and means, among
16   others, in pursuit of their fraudulent purpose:

17       a.    It was a part of the conspiracy that defendant STEPANIUK
18   and his conspirators offered to pay, and paid, compensation to physicians
19   (and those acting on their behalf) to refer Workers' Compensation
20   patients to defendant SAFETY WORKS and defendant MEDICAL LEGAL
21   EVALUATIONS for FCE's.

22       b.    It was a further part of the conspiracy that defendant
23   STEPANIUK obscured the true nature of his financial relationships with
24   physicians and those acting on behalf of physicians, in order to conceal
25   his corrupt kickback and bribery scheme, including by entering into
26   various sham contracts for "marketing" and "rent," when in reality the
27   money paid by defendant STEPANIUK amounted to volume-based, per-scan

28

1 | bribes and kickbacks to induce physicians to refer patients to SAFETY
2 | WORKS and MEDICAL LEGAL EVALUATIONS.

3 |       c.    It was a further part of the conspiracy that defendant
4 | STEPANIUK hired individuals, including WHITE, to find and recruit
5 | physicians who were willing to accept kickbacks to refer FCE's to
6 | STEPANIUK'S companies, SAFETY WORKS and MEDICAL LEGAL EVALUATIONS.

7 |       d.    It was a further part of the conspiracy that defendant
8 | STEPANIUK offered to pay and did pay referring physicians, including
9 | RIGLER, $50 per patient referred to SAFETY WORKS and MEDICAL LEGAL
10 | EVALUATIONS for FCE's, payments disguised either as a "rental" or hourly
11 | "marketing" fee to the physician.

12 |       e.    It was a further part of the conspiracy that defendant
13 | STEPANIUK directed WHITE and others to generate false invoices, which
14 | purported to report the number of marketing "hours" worked, when in
15 | reality the numbers corresponded to the number of patients who were
16 | referred for FCE's, for which STEPANIUK was paying a per-patient
17 | kickback.

18 |       f.    It was a further part of the conspiracy that defendant
19 | STEPANIUK caused defendant SAFETY WORKS and defendant MEDICAL LEGAL
20 | EVALUATIONS to issue checks to pay per-patient kickbacks, disguised as
21 | payments for "FCE Marketing" expenses.

22 |       g.    It was a further part of the conspiracy that defendant
23 | STEPANIUK caused FCE's to be conducted at the San Diego, Escondido, and
24 | Calexico clinics of Crosby Square Medical, where RIGLER was the referring
25 | physician and MARTINEZ managed RIGLER'S referrals.

26 |       h.    It was a further part of the conspiracy that defendant
27 | SAFETY WORKS and defendant MEDICAL LEGAL EVALUATIONS used the U.S. mail
28 | to send claims for reimbursement to CWCS insurers, for services provided

1  to patients whose referrals had been procured through unlawful kickbacks
2  and bribes to the referring physician.

3          i.    It was a further part of the conspiracy that the co-
4  conspirators concealed from patients, and intended to cause the
5  physicians to conceal from patients, the bribe and kickback payments,
6  in violation of those physicians' fiduciary duties to their patients and
7  in violation of California law.

8          j.    It was a further part of the conspiracy that the co-
9  conspirators concealed from insurers, and intended to cause the
10 physicians to conceal from insurers, the bribe and kickback payments,
11 which would have rendered the claims for reimbursement unpayable under
12 California law.

13         k.    It was a further part of the conspiracy that defendants
14 SAFETY WORKS and defendant MEDICAL LEGAL EVALUATIONS filed liens, and
15 intended to file liens, to collect payment on claims for ancillary
16 medical services procured through the payment of bribes and kickbacks.

17         l.    It was a further part of the conspiracy that defendant
18 submitted and caused to be submitted over $1 million in claims for
19 ancillary medical services procured through the payment of bribes and
20 kickbacks.

21                              **OVERT ACTS**

22     16.   In furtherance of the conspiracy and in order to effect the
23 objects thereof, defendant and others committed or caused the commission
24 of the following overt acts within the Southern District of California
25 and elsewhere:

26         a.    On or about November 6, 2014, defendant STEPANIUIK sent
27 an e-mail to MARTINEZ, offering to pay a rate of $50/hour, and requesting

28                                  7

1  that Martinez "invoice/email me and the number of 'hours' that you work
2  per month."

3        b.   On or about November 14, 2014, at STEPANIUK's direction
4  and to benefit STEPANIUK, co-conspirator WHITE sent a text message to
5  co-conspirator MARTINEZ, advising MARTINEZ that if 24 FCE's had been
6  referred in October, then the invoice should be in the amount of $1,200,
7  that is, $50 per patient.

8        c. . On or about November 14, 2014, MARTINEZ apologized to
9  defendant STEPANIUK for sending an incorrect invoice, explaining that
10  "I did not correctly document my hours worked for the month of October,"
11  and included a corrected invoice reporting "24 hours" of marketing at
12  $50 per hour for October, for a total of $1,200, even though he had not
13  completed 24 hours of marketing work for STEPANIUK, but instead had
14  directed 24 of RIGLER's patients to SAFETY WORKS for FCE's.

15        d.   On or about November 17, 2014, defendant STEPANIUK
16  thanked MARTINEZ via email for the "corrected invoice," which
17  fraudulently disguised the kickback as payment for phony marketing
18  hours.

19        e.   On or about November 17, 2014, defendant STEPANIUK caused
20  defendant SAFETY WORKS to issue a check for $1,200 to MARTINEZ's company
21  to pay $50 per patient kickbacks.

22        f.   Starting in November 2014, in accordance with STEPANIUK's
23  direction, MARTINEZ submitted invoices for payment reporting the number
24  of FCE's referred as "marketing hours" worked, and, as proof of the
25  amount owed, attached sign-in sheets showing the names and signatures
26  of the patients who had been given FCE's at RIGLER's clinics.

27
28

g.    On or about January 7, 2015, MARTINEZ submitted to SAFETY WORKS an invoice reporting a total of 49 marketing hours, attaching sign-in sheets identifying the 49 patients who had received FCE's.

h.    On or about February 4, 2015, MARTINEZ submitted to SAFETY WORKS an invoice reporting a total of 61 marketing hours, attaching sign-in sheets identifying the 61 patients who had received FCE's.

i.    On or about March 11, 2015, MARTINEZ submitted to SAFETY WORKS an invoice reporting a total of 34 marketing hours, attaching sign-in sheets identifying the 34 patients who had received FCE's.

j.    On or about April 8, 2015, in an email to STEPANUIK, MARTINEZ requested payment of $50 for each patient referred for an FCE in March, asserting, "I have attached my hours for the month of March," and attached the sign-in sheets identifying the 69 patients who had received FCE's.

k.    On or about May 7, 2015, in an email to STEPANUIK, MARTINEZ requested payment of $50 for each patient referred for an FCE in April, asserting, "Attached are my hours for the month of April," and attached the sign-in sheets identifying the 46 patients who had received FCE's.

l.    Between November 2014 and October 2015, defendant STEPANIUK caused defendant SAFETY WORKS to issue checks totaling $24,500 to MARTINEZ, constituting $50 per patient kickbacks paid for 490 of RIGLER's patients.

m.    Starting in November 2014, defendant STEPANIUK caused defendant SAFETY WORKS and defendant MEDICAL LEGAL EVALUATION to submit over $1,000,000 in claims for reimbursement to health care benefit programs for FCE's and related services procured through the $50 per-

9

1  patient kickback STEPANIUK paid for RIGLER's patients and those of other

2  physicians.

3  All in violation of Title 18, United States Code, Section 1349.

### Counts 2-13

**HONEST SERVICES MAIL FRAUD**
**18 U.S.C. §§ 1341, 1346 & 2**

17.  Paragraphs 1 through 11 of this Indictment are realleged and incorporated by reference.

18.  Beginning on a date unknown to the grand jury, but no later than mid-2014, and continuing through at least October 2015, within the Southern District of California and elsewhere, defendants STEPHEN ANDREW STEPANIUK, SAFETY WORKS, and MEDICAL LEGAL EVALUATIONS knowingly and with the intent to defraud, devised and participated in a material scheme to defraud, that is, to deprive patients of their intangible right to their physician's honest services.

19.  Paragraphs 14 through 16 of this Indictment are realleged and incorporated by reference as more fully describing the scheme to defraud, that is, to deprive patients of their intangible right to their physician's honest services.

### EXECUTIONS OF THE SCHEME TO DEFRAUD

20.  On or about the following dates, within the Southern District of California and elsewhere, defendant STEPHEN ANDREW STEPANIUK, for the purpose of executing the scheme, caused the following mail matter to be delivered by the United States Postal Service and private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed:

| Count | Date | Item Mailed |
|-------|------|-------------|
| 2 | Dec. 10, 2014 | Request for payment totaling $1502 for FCE and related services for Heriberto R., sent to American Claims Management, procured through the payment of a kickback |
| 3 | Jan. 5, 2015 | Request for payment totaling $2160 for FCE and related services for Adolfo N., sent to ICW Group Insurance, procured through the payment of a kickback |
| 4 | Jan. 20, 2015 | Request for payment totaling $2160 for FCE and related services for Victor C., sent to Preferred Employers, procured through the payment of a kickback |
| 5 | Feb. 20, 2015 | Request for payment totaling $1502 for FCE and related services for Faustino C., sent to Preferred Employers, procured through the payment of a kickback |
| 6 | June 16, 2015 | Request for payment totaling $2268 for FCE and related services for Delfino R., sent to American Claims Management, procured through the payment of a kickback |
| 7 | Aug. 24, 2015 | Request for payment totaling $2160 for FCE and related services for Jose P., sent to ICW Group Insurance, procured through the payment of a kickback |
| 8 | Aug. 31, 2015 | Request for payment totaling $2160 for FCE and related services for Alberto N., sent to ICW Group, procured through the payment of a kickback |
| 9 | Nov. 11, 2015 | Request for payment totaling $2268 for FCE and related services for Ricardo Z., sent to Preferred Employers, procured through the payment of a kickback |
| 10 | Aug. 21, 2015 | Request for payment totaling $2268 for FCE and related services for Esteban V., sent to American Claims Management, procured through the payment of a kickback |
| 11 | Sept. 24, 2015 | Request for payment totaling $2268 for FCE and related services for Sergio V., sent to American Claims Management, procured through the payment of a kickback |

| Count | Date | Item Mailed |
|-------|------|-------------|
| 12 | Dec. 2, 2015 | Request for payment totaling $2160 for FCE and related services for Pedro E., sent to ICW Group Insurance, procured through the payment of a kickback |
| 13 | Jan. 22, 2016 | Request for payment totaling $2268 for FCE and related services for Ana R., sent to ICW Group – San Diego, procured through the payment of a kickback |

All in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## CRIMINAL FORFEITURE

21. Paragraphs 1 through 20 of this Indictment are realleged and incorporated as if fully set forth herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

22. Upon conviction of one or more of the offenses of Conspiracy and Honest Services Mail Fraud as alleged in Counts 1 through 13, defendants STEPHEN ANDREW STEPANIUK, SAFETY WORKS, and MEDICAL LEGAL EVALUATIONS shall forfeit to the United States all right, title, and interest in any property, real or personal, that constitutes or is derived from proceeds traceable to such offenses.

23. If any of the above described forfeitable property, as a result of any act or omission of defendants STEPHEN ANDREW STEPANIUK, SAFETY WORKS, and MEDICAL LEGAL EVALUATIONS (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty;

1  it is the intent of the United States, pursuant to Title 21, United

2  States Code, Section 853(p) and Title 18, United States Code,

3  Section 982(b), to seek forfeiture of any other property of defendants

4  STEPHEN ANDREW STEPANIUK, SAFETY WORKS, and MEDICAL LEGAL EVALUATIONS

5  up to the value of the forfeitable property described above.

6  All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and

7  Title 28, United States Code, Section 2461(c).

8        DATED: March 19, 2019.

9                                            A TRUE BILL:

10

11                                           Foreperson

12  ROBERT S. BREWER, JR.
13  United States Attorney

14
15  By: _____
16     VALERIE H. CHU
       Assistant U.S. Attorney

17
18  By: _____
       CAROLINE P. HAN
19     Assistant U.S. Attorney

20  By: _____
21     fw/ FRED SHEPPARD
       Assistant U.S. Attorney

22

23

24

25

26

27

28